**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL GIEHL AND JANET GIEHL,

husband and wife,

        Plaintiffs,

          v.

TEREX UTILITIES and TEREX

TELETECT, INC.,

        Defendants.

CIVIL ACTION NO. 3:12-0083

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion to Dismiss Plaintiffs' Complaint (Doc. 3) filed by Defendants Terex Utilities, Inc. and Terex South Dakota, Inc. (collectively "Terex"). Plaintiffs, Michael and Janet Giehl, commenced this action asserting claims of negligence, strict products liability, and breach of warranty against Terex to recover damages for personal injuries sustained by Michael Giehl.  (Doc. 1, Ex. B.)  Terex moves to dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants' motion to dismiss will be granted in part and denied in part.  Because Plaintiffs adequately allege claims for negligence and strict products liability, Defendants' motion will be denied as to these claims.  However, because Plaintiffs' breach of warranty cause of action is barred by the statute of limitations, the breach of warranty claim will be dismissed.

## I. Background

The relevant facts as set forth in Plaintiffs' Complaint (Doc. 1, Ex. B "Complaint") are as follows:

Defendants are part of the Terex Corporation, which makes and designs a variety of construction utility products. (Complaint, ¶ 3.) One such product designed by Defendants was a 2009 XT60 model aerial device that was designed to be mounted on truck chassis for use as a boom truck. (Complaint, ¶ 3.)  On or about February 6, 2003, Defendants delivered to Four Seasons Tree Service ("Four Seasons") an International 2002 Model 4300

truck chassis with a truck-mounted 2009 XT60 aerial device (hereinafter "the Boom Truck") that had been designed, manufactured, and/or assembled by Terex. (Complaint, ¶ 3.)

Plaintiff Michael Giehl ("Mr. Giehl") was an experienced tree trimmer employed by Four Seasons. (Complaint, ¶¶ 5, 16.)  On July 2, 2009, Mr. Giehl was working for Four Seasons in South Canaan, Pennsylvania, where John Brussell ("Mr. Brussell") was using the Boom Truck to trim tree limbs away from high tension power lines. (Complaint, ¶ 6.)  A number of Four Seasons trucks were lined up on the narrow roadway where the Boom Truck was located. (Complaint, ¶ 6.)  Thus, in the event of a boom failure, an employee would need to clamber from the bucket to a nearby tree, and, with the assistance of a co-worker, climb to safety. (Complaint, ¶ 7.)

On July 2, 2009, Mr. Brussell was in the bucket above power lines trimming branches when the plates and welds holding the boom arm unexpectedly failed, causing the bucket to sag or tip downwards towards the high tension wires. (Complaint, ¶ 9.)  The boom attachment failed because the gusset plates were grossly undersized and the welds attached to the gusset plates at the pivot point were defective, causing the boom to collapse under its own weight. (Complaint, ¶ 12.)  As a result of the boom failure, Mr. Brussell became trapped, stranded helplessly above the high tension power wires. (Complaint, ¶ 13.)

Because no other bucket trucks could be immediately employed to rescue Mr. Brussell, Mr. Giehl donned his climbing gear and began climbing a wet tree adjacent to Mr. Brussell. (Complaint, ¶¶ 14-15.)  As Mr. Giehl ascended the tree to deliver a climbing line and harness to Mr. Brussell, Mr. Giehl's strap slipped and he fell from the tree. (Complaint, ¶ 15.)  The fall caused Mr. Giehl to fracture his ribs and his right wrist. (Complaint, ¶ 15.)  As a result of the fall, Mr. Giehl suffered permanent injuries, and his wife, Janet, has been deprived of the society and company of her husband. (Complaint, ¶¶ 18-19.)

Plaintiffs subsequently initiated the present action in the Court of Common Pleas of Wayne County, Pennsylvania, by filing a Writ of Summons on June 29, 2011. (Doc. 1, Ex. A.)  Plaintiffs filed the Complaint on December 16, 2011 asserting claims against Defendants for negligence, strict liability, and breach of warranty. (Doc. 1, Ex. B.)

2

Defendants timely removed the action to this Court on January 12, 2012. (Doc. 1.)  Next, on January 19, 2012, Defendants filed a motion to dismiss all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 5.)  Defendants' motion has been fully briefed and is now ripe for disposition.

## II. Discussion

### A.    Legal Standard for a 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

3

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir.1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir.1997)).

Additionally, while courts do not typically dismiss claims as time barred on a motion to dismiss, "a court may . . . dismiss a claim under 12(b)(6) where the bar is 'apparent on the face of the complaint.'" *Metso Paper USA, Inc. v. Bostik, Inc.*, No. 3:08–CV–772, 2011 WL 2670320, at *3 (M.D.Pa. July 8, 2011) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir.2002)). Thus, "the determination of whether a plaintiff's claim is barred by the

statute of limitations involves issues of fact and therefore, the statute of limitations is normally addressed at the summary judgment stage or at trial." *Kiser v. A.W. Chesterton Co.*, 770 F.Supp.2d 745, 747 (E.D.Pa.2011).

As Defendants seek dismissal of all of Plaintiffs' claim, the Court will examine Plaintiffs' claims for negligence, strict liability, and breach of warranty.

## B.   Plaintiffs' Negligence Claim

Plaintiffs' First Cause of Action asserts that Defendants negligently manufactured, designed, assembled, and/or marketed the Boom Truck which caused Mr. Giehl's injuries. (Complaint, ¶¶ 20-28.)  Plaintiffs allege that it was "foreseeable to both Defendants that a bystander (a co-employee) would attempt to rescue another worker." (Complaint, ¶ 21.) Plaintiffs assert that Defendants knew that the Boom Truck would be used for tree trimming services near power lines, and that if a user of the Boom Truck became stranded, a co-employee in the immediate vicinity would be called upon to attempt a rescue. (Complaint, ¶ 22.)  Given the nature of the Boom Truck's intended use, Plaintiffs claim Defendants "should have foreseen that users stranded in the bucket would have to be rescued from great heights and considerable danger of death and/or electrocution." (Complaint, ¶ 23.) Thus, Plaintiffs assert that the Boom Truck as designed, manufactured, and assembled with defective gusset plates and welds caused Mr. Giehl's injuries. (Complaint, ¶¶ 25-28.)

Defendants, however, argue that Plaintiffs' negligence claim fails because "Plaintiffs have not pled the required duty or causation elements of a viable negligence claim." (Doc. 3, 3.)  According to Defendants, the duty requirement of a negligence claim requires a relationship between the parties. (Doc. 3, 5.) And, as "Mr. Giehl did not purchase the [Boom Truck], and he was not using the [Boom Truck] at the time of the accident .. . [and] the [Boom Truck] never even came into contact with Mr. Giehl," Defendants contend that Plaintiffs failed to adequately state the duty element of a negligence claim. (Doc. 13, 4.) Additionally, Defendants argue that Plaintiffs fail to allege the essential proximate cause element of a negligence claim "because Mr. Giehl's actions break the chain of causation." (Doc. 3, 6.)

5

To state a claim for negligence under Pennsylvania law, a plaintiff must allege the following elements:

> (1) A duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct;
> (2) a failure to conform to the standard required;
> (3) a causal connection between the conduct and the resulting injury; and
> (4) actual loss or damage resulting to the interests of another.

*Morena v. S. Hills Health Sys.*, 501 Pa. 634, 642 n.5, 462 A.2d 680, 684 n.5 (1983).  The Court will address Defendants' arguments that Plaintiffs failed to plead the necessary duty and causation elements of a negligence claim.

### 1.    Duty

The parties dispute whether Plaintiff adequately alleged Defendants owed a duty to Mr. Giehl to safely design and manufacture the Boom Truck. (Doc. 3; Doc. 8.)   As recognized by Plaintiffs, (Doc. 8, 8):

> In Pennsylvania, the determination of whether a duty of care is owed is a policy decision that requires the trial court to apply the '*Althaus* test.'  That inquiry requires that the court consider: '(1) the relationship between the parties: (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution.'

*Berrier v. Simplicity Mfg., Inc.*, 563, F.3d 38, 61 (3d Cir. 2009) (quoting *Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1169 (2000)).

Here, as the issue before the Court is simply whether Plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, the Court will deny Defendants' motion to dismiss Plaintiffs' negligence claim as Plaintiffs sufficiently allege the existence of a duty of care as set forth in *Althaus* and *Berrier*.   In particular, Plaintiffs allege: (1) a relationship between Mr. Giehl and Four Seasons, the purchaser of the Boom Truck, (Complaint, ¶¶ 3, 6); (2) that Defendants were aware that a person trapped in the bucket when extended near power lines would invite a rescue attempt, (Complaint, ¶ 8); and (3) that imposition of a duty on Defendants would only require the production of a safe product for the purpose with which it was sold. (Complaint, ¶¶ 4, 24.) *See Berrier*, 563 F.3d at 61.  Although the Court recognizes Defendants' contention

that no duty was owed to Mr. Giehl under these circumstances, the Court's role in deciding this motion to dismiss is limited to making a determination as to whether Plaintiffs sufficiently alleged facts that Terex owed Mr. Giehl a duty of care. *See Twombly*, 550 U.S. at 570.  That is, the question before the Court is whether Plaintiff sufficiently alleged- not proved- the *Althaus* factors.   As set forth above, Plaintiffs' Complaint satisfies this obligation.

### 2.   Proximate Cause

Defendants also argue that Plaintiffs fail to allege the proximate cause element of a negligence claim "because Mr. Giehl's actions break the chain of causation." (Doc. 3, 6.) Conversely, Plaintiffs assert that it was "undeniably foreseeable" that a defectively designed boom truck would require immediate rescue action to be taken and "any action that took place subsequent to the failure of the boom truck was as a direct result of a worker being put in peril by Defendants' negligence." (Doc. 8, 14.)

To establish a causal connection between Terex's conduct and Mr. Giehl's injuries, Plaintiffs must show that Terex was a proximate cause of Mr. Giehl's injuries. *See Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280,1284 (1978) (citing *Flickinger Estate v. Ristky*, 452 Pa. 69, 305 A,2d 40 (1973); *Dornan v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966); *Cuthbert v. Philadelphia*, 417 Pa. 610, 209 A.2d 261 (1965); *Gift v. Palmer*, 392 Pa. 628, 141 A.2d 408 (1958); *Fries v. Ritter*, 381 Pa, 470, 113 A.2d 189 (1955)).  Proximate cause, however, is merely "a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of [the] defendant; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor[1] in bringing about the plaintiff's harm." *Hamil*, 392 A.2d at 1284 (citing *Flinkinger Estate*, 305 A.2d at 43).

The Pennsylvania Supreme Court has "long held that a defendant is not relieved

---

[1]     As noted by Plaintiffs, (Doc. 8, 6), the term "factual cause" has been adopted to replace the previously-used terms "substantial factor" and "legal cause." *Gorman v. Costello*, 929 A.2d 1208, 1213 n.7 (Pa. Super. 2007).

from liability because another concurring cause is also responsible for producing injury." *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619, 622 (1995) (citing *Jones v. Montefiore Hosp.*, 494 Pa. 410, 416, 431 A.2d 920, 923 (1981); *Hamil*, 392 A.2d at 1284).  Two or more causes may contribute to and be the proximate cause of an injury. *See Feeney v. Disston Manor Pers. Care Home, Inc.*, 849 A.2d 590, 595 (Pa. Super. 2004).

Nevertheless, a party may be relieved from liability for his negligent conduct when an intervening act constitutes a "superseding cause." *See Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1060 (Pa. Super. 2003) (citing *Frey v. Smith*, 454 Pa. Super. 242, 685 A.2d 169, 173 (1996)).  A superseding cause is an act of a third person or other force "which, by its intervention, prevents the negligent party from being liable for harm to another caused by his or her antecedent negligent conduct." *Mahan*, 841 A.2d at 1060 (citing *Krasevic v. Goodwill Indus., Inc.*, 764 A.2d 561, 569 (Pa. Super. 2000)).  To determine whether an intervening force is a superseding cause, "the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable." *Powell*, 653 A.2d at 623.

Because the issue of proximate cause is inherently fact-based, causation is generally a question of fact for the jury. *See Summers v. Cetainteed Corp.*, 606 Pa. 294, 314, 997 A.2d 1152, 1164 (2010).  However, "where it is clear that reasonable minds could not differ on the issue," the issue of causation may be removed from the trier of fact's consideration. *Id* (quoting *Hamil*, 392 A.2d at 1285-86 (1978)).

The parties vigorously dispute whether Mr. Giehl's climbing and falling from a tree eliminates Defendants as a proximate cause of Mr. Giehl's injuries. (Doc. 3; Doc. 8.)  As alleged by Plaintiffs, Mr. Giehl's climbing of a tree to rescue a co-worker was not so unreasonably foreseeable to warrant dismissal of Plaintiffs' negligence claim for failure to state a claim.  In particular, Plaintiffs assert that: (1) Terex was aware that Four Seasons purchased the Boom Truck to be used for tree trimming services, (Complaint, ¶ 3); (2) the Boom Truck was intended to be used near power lines, (Complaint, ¶ 8); (3) in the event of a boom failure, an individual would attempt to rescue a stranded co-worker, (Complaint, ¶ 21); (4) given the nature of the use of the Boom Truck, users stranded in the bucket would

8

need to be rescued from great heights and considerable danger, (Complaint, ¶ 23); and (5) if the Boom Truck experienced a catastrophic boom failure, rescuers of stranded users would be in risk of harm or danger. (Complaint, ¶ 23.)  As the Court is required to assume the veracity of Plaintiffs' well-pled factual allegations, *see Iqbal*, 129 S. Ct. at 1950, and causation is generally a question of fact, *see Summers*, 997 A.2d at 1264, Plaintiffs' Complaint sufficiently alleges the proximate cause element of a negligence claim because it was reasonably foreseeable that an individual could be injured while rescuing a co-worker stranded in the bucket of a defective boom truck.  While it may ultimately be determined that Mr. Giehl's conduct constituted a superseding cause preventing Terex from being a proximate cause of his injuries, it would be premature for the Court to make such a determination now on Defendants' motion to dismiss.  Plaintiffs may therefore proceed with their negligence claim.

## C.     Plaintiffs' Strict Liability Claim

Plaintiffs' Second Cause of Action asserts a claim against Defendants for strict products liability for the defective design and manufacture of the Boom Truck. (Complaint, ¶ 32.)  Plaintiffs allege that the Boom Truck was placed into the stream of commerce by Defendants and that the Boom Truck did not undergo any substantial changes after it was purchased by Four Seasons. (Complaint, ¶¶ 30-31, 33.)  Plaintiffs also allege that Mr. Giehl as a bystander/rescuer was in privity with Defendants. (Complaint, ¶ 33.)  And, Plaintiffs argue that Mr. Giehl was injured as a result of the unreasonably dangerous and defective Boom Truck. (Complaint, ¶ 14.)  In opposition, Defendants argue that Plaintiffs fail to state a claim for strict products liability because the Boom Truck was not "being used by Mr. Giehl at the time of his accident or that Mr. Giehl was an 'intended user'" of the Boom Truck. (Doc. 3, 7.)

Pennsylvania products liability claims have long been governed by the Restatement (Second) of Torts § 402A, which allows for recovery where a product in "a defective condition unreasonably dangerous to the consumer or user" causes harm to the plaintiff. Restatement (Second) of Torts, § 402A (1); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854

(1966) (adopting the language of § 402A as the law of Pennsylvania). To recover on a products liability claim under § 402A, the plaintiff must prove that (1) the product was defective, and (2) the defect was the proximate cause of the plaintiff's injuries. *See Weiner v. Am. Honda Motor Co.*, 718 A.2d 305, 307 (Pa. Super. 1998) (citing *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 293, 696 A.2d 1169, 1172 (1997)). Additionally, the product must have been defective when it left the supplier's control. *See Weiner*, 718 A.2d at 308. Three types of defective conditions give rise to strict liability claims: design defects, manufacturing defects, and failure to warn defects. *See id*. at 307 (citing *Phillips v. A-Best Prods., Co.*, 542 Pa. 124, 131, 665 A.2d 1167, 1170 (1995)). Plaintiffs' Complaint asserts both that the Boom Truck was defectively designed and defectively manufactured. (Complaint, ¶ 32.)

Additionally, as set forth by the Pennsylvania Supreme Court, "the plaintiff must establish that the product was unsafe for its *intended user* . . . a manufacturer will not be held strictly liable for failing to design a product that was safe for use by any reasonably foreseeable user as such a standard would improperly import negligence concepts into strict liability." *Phillips v. Cricket Lighters*, 576 Pa. 644, 657, 841 A.2d 1000, 1007 (2003) (plurality opinion) (emphasis added). Since the Pennsylvania Supreme Court decided *Phillips*, however, Pennsylvania products liability law has evolved into a "continuing state of disrepair." *Beard v. Johnson & Johnson, Inc.*, No. 35 WAP 2010, 2012 WL 1021323 (Pa. Mar. 22, 2012).

1. **The Third Circuit's *Berrier* Decision**

Section 402A of the Restatement (Second) of Torts, as well as the "intended user" doctrine, no longer appear to be controlling formulations of the law in Pennsylvania in light of the Third Circuit's decision in *Berrier v. Simplicity Mfg.*, 563 F.3d 38 (3d Cir. 2009). In *Berrier*, the district court granted summary judgment to the defendants in a strict liability action because the plaintiff was "a bystander and not an intended user of [the defective product]." *Id*. at 45. On appeal, the Third Circuit emphasized that "the Pennsylvania Supreme Court has never expressly determined if one who is merely a bystander and not a user of a product can bring a products liability claim against a manufacturer to recover for

10

injuries that occur while an intended user is using the manufacturer's product." *Id.* at 40. As such, the Third Circuit predicted that the Pennsylvania Supreme Court would permit a bystander a cause of action in strict liability and the Third Circuit vacated the district court's grant of summary judgment to the defendants  *See id.* at 40, 61.[2]

The precedential value of *Berrier*, however, has been debated by litigants as the Third Circuit's decision was largely predicated on its prediction that Pennsylvania would adopt the Restatement (Third) of Torts and abandon the Restatement (Second) of Torts § 402A. *See id.* at 54.  In particular, the precedential value of *Berrier* has been contested because the Pennsylvania Supreme Court case on which the Third Circuit based its prediction was never decided on the merits, as the Supreme Court ultimately dismissed the appeal as having been improvidently granted.  *See Bugosh v. I.U. N. Am., Inc.*, 596 Pa. 265, 942 A.2d 897 (2008), *dismissed as improvidently granted* 601 Pa. 277, 291 A.2d 1228 (2009).[3]  As a result, Terex asserts that *Berrier* "is not controlling," (Doc. 13, 8), while the

---

[2]     Because the Pennsylvania Supreme Court had never expressly recognized or rejected a bystander's right to recover under products liability law, the Third Circuit conducted an extensive prediction analysis as mandated by the *Erie* doctrine. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *see also Nationwide Mut. Ins. Co., v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (in the absence of controlling state precedent, district court must predict how the Pennsylvania Supreme Court would resolve the issue).  The Third Circuit, after thoroughly reviewing the development of products liability law in Pennsylvania, found that "a majority of the Supreme Court would agree 'that the Third Restatement's clarified approach illuminates the most viable route to providing essential clarification and remediation.'" *Berrier*, 563 F.3d at 60 (quoting *Phillips*, 841 A.2d at 1012 (Saylor, J., concurring)).

[3]     The Pennsylvania Supreme Court has cautioned against reading between the lines of an allocatur dismissal:

> In the circumstances where we have accepted an issue by granting allowance of appeal, and this Court, after conducting our review of the issue, enters an order dismissing the appeal as having been improvidently granted, the effect is as though this Court never granted allowance of appeal.  In other words, a dismissal as having been improvidently granted has the exact same effect as if this Court had denied the petition for allowance of appeal (allocatur) in

Giehl's claim that "the Pennsylvania Superior and Supreme Court have not addressed this 'intended user' language in reference to a bystander since *Berrier*. Thus, *Berrier* is controlling in this case." (Doc. 8, 18.)  As aptly noted by Judge Tucker of the District Court for the Eastern District of Pennsylvania, the decision whether to apply the Restatement (Second) of Torts or Restatement (Third) of Torts is of critical importance as:

> [O]ne standard focuses on an intended user making an intended use of the product, the other focuses on the foreseeable risks of harm and whether an alternative design could have minimized or eliminated that risk. Consequently, the parties argue that the substantive differences between the two standards will have a significant impact on the admissibility of evidence and ultimately, the outcome of this action.

*Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359, 365 (E.D. Pa. 2010).

District courts in the Third Circuit have routinely diverged as to *Berrier's* precedential value in light of the Pennsylvania Supreme Court's dismissal of *Bugosh*. *Compare Covell v. Bell Sports, Inc.*, No. 9-2470, 2010 WL 4783043, at *4 (E.D. Pa. Sept. 8, 2010) (Diamond, J.) (applying *Berrier*); *Hoffman*, 694 F. Supp. 2d at 365 (Tucker, J.) (same); *Richetta v. Stanely Fastening Sys., L.P.*, 661 F. Supp. 2d 500, 507 (E.D. Pa. 2009) (Golden, J.) (same), *with Thompson v. Med-Mizer, Inc.*, No. 10-cv-2058, 2011 WL 1085621, at *7 (E.D. Pa. Mar. 21, 2011) (Gardner, J.) (court not bound by *Berrier*); *Sweitzer v. Oxmaster, Inc.*, No. 09-5606, 2010 WL 5257226, at *5 (E.D. Pa. Dec. 23, 2010) (Pratter, J.) (same); *Milesco v. Norfolk*, No. 1:09-CV-1233, 2010 WL 55331, at *3 (M.D. Pa. Jan. 5, 2010) (Jones, J.) (rejecting application of *Berrier* but refusing to address Defendant's "intended user" claim).

## 2.    The *Erie* Doctrine

The district courts that have declined to apply the Restatement (Third) of Torts to products liability actions after *Berrier* have emphasized the need to resolve the issue in accordance with the *Erie* doctrine. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct.

---

the first place.  Where we dismiss an appeal as improvidently granted, the lower tribunal's opinion and order stand as a decision of that court and this Court's order has no precedential value. *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 904 (1996).

817, 82 L. Ed. 1188 (1938).  *Erie* has been described as embodying:

> One of the modern cornerstones of our federalism, expressing policies that profoundly touch the allocation of judicial power between the state and federal system.  *Erie* recognized that there should not be two conflicting systems of law controlling the primary activity of citizens, for such alternative governing authority must necessarily give rise to a debilitating uncertainty in the planning of everyday affairs.  And it recognized that the scheme of our Constitution envisions an allocation of law-making functions between state and federal legislative processes which is undercut if the federal judiciary can make substantive law affecting state affairs beyond the bounds of congressional legislative powers in this regard.  Thus, in diversity cases *Erie* commands that it be the state law governing primary private activity which prevails.

*Hanna v. Plummer*, 380 U.S. 460, 474-75, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965) (Harlan, J., concurring).

According to the *Erie* doctrine, a court sitting in diversity should apply the state law as pronounced by the highest court of the state. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007).  "The highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S. Ct. 179, 85 L. Ed. 139 (1940) (citing *Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls*, 306 U.S. 103, 107, 59 S. Ct. 420, 83 L. Ed. 515 (1939)).  However, when the highest court of the state has not addressed an issue, a federal court must predict how the highest state court would resolve the issue. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010).  And, in making this prediction, the court "may give serious consideration to the opinion of an intermediate appellate court." *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148-49 (3d Cir. 1988) (citing *Commercial Union Ins. Co. v. Butuminous Cas. Corp.*, 851 F.2d 98, 100 (3d Cir. 1988); *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 117 (3d Cir. 1987); *Wilson v. Asten-Hill Mfg. Co.*, 791 F.2d 30, 32 (3d Cir. 1986)).  The decisions of intermediate state appellate courts can be disregarded when a federal court "'is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Buffetta*, 230 F.3d at 637 (quoting *West*, 311 U.S. at 237).

Once the Third Circuit predicts how the state's highest court would resolve an issue,

district courts are bound by this prediction "unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred." *Largoza v. Gen. Elec. Co.*, 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) (citing *Doane v. Travelers Ins. Co.*, 266 F. Supp. 504, 405 (E.D. Pa. 1966)). For example, in *Sweitzer*, the District Court for the Eastern District of Pennsylvania declined to apply *Berrier* because the Third Circuit's prediction that the Restatement (Third) of Torts would be adopted had not yet materialized. *See Sweitzer*, 2010 WL 5257226, at *5. The court also noted that no Pennsylvania Supreme or Superior Court decisions applied the Restatement (Third) of Torts. *See id*. As a result, the *Sweitzer* court concluded that it was "obliged to respect the actual pronouncements of law by the state appellate courts on this issue and would indeed expect our Court of Appeals to give its own *Berrier* decision no greater significance than this Court is constrained to accord it at this time." *Id*; *but see Richetta v. Stanley Fastening Sys., L.P.*, 661 F. Supp. 2d 500, 507 (E.D. Pa. 2009) (Pennsylvania Supreme Court's dismissal in *Bugosh* was not a decision on the merits or an explicit rejection of *Berrier*, and "in the absence of such a definitive holding, the Third Circuit's adoption of the Third Restatement in *Berrier* applies").

### 3.    The Third Circuit's *Covell* Decision

If the Court was addressing the precedential value of *Berrier* in the same circumstances as these courts, the Court would be inclined to conduct a deeper analysis of these opinions before deciding whether to apply the Restatement (Third) of Torts and *Berrier* to this case. Recent developments in the Third Circuit have rendered such an analysis unnecessary, however, as the Third Circuit, on July 14, 2011, reiterated that "***federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts.***" *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 359 (3d Cir. 2011) (emphasis added). According to Circuit Judge Aldisert, "the state of [Pennsylvania products liability] law is no different now than it was when we decided *Berrier*." *Id*. at 360. The *Covell* court concluded that the *Bugosh* dismissal was "not an intervening 'authority' sufficient to revisit our holding in *Berrier*." *Id*. at 364. Thus,

14

based on the *Covell* court's pronouncement that *Berrier* remains the controlling formulation of the law for district courts in this Circuit, and the Pennsylvania Supreme Court has not issued a decision to the contrary, the Court will apply Sections 1 and 2 of the Restatement (Third) of Torts in this products liability action arising under Pennsylvania law.[4]

### 4.   The Restatement (Third) of Torts

Under *Berrier* and *Covell*, for Plaintiffs to survive a motion to dismiss, Plaintiffs must adequately plead the elements of a strict products liability claim as set forth in the Restatement (Third) of Torts:

> **§ 1: Liability of Commercial Seller or Distributor for Harm Caused by Defective Products**
>
> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

---

[4]     On March 22, 2012, the Pennsylvania Supreme Court issued an opinion in which the Court again commented on "the continuing state of disrepair in the arena of Pennsylvania strict-liability design defect law." *Beard v. Johnson & Johnson, Inc.*, No. 35 WAP 2010, 2012 WL 1021323 (Pa. Mar. 22, 2012). However, because the appellant failed to raise the issue as to the controlling formulation of products liability law in Pennsylvania, the Court continued to apply "restraint in the acceptance of subsidiary issues, pending remediation of the foundational deficiencies." *Id.* at *12. In a concurring opinion joined by Justice Todd and Justice McCaffery, Justice Baer stated that "until such time as this Court is presented with a case to resolve this difficult issue, I express no opinion on the merits of the adoption of the Restatement Third and will continue to apply the current law of Pennsylvania, which is Section 402A of the Restatement Second." *Id.* at *14 (Baer, J., concurring). The concurrence also emphasized that "the Majority does not express an opinion on behalf of the Court regarding the adoption of the Restatement Third." *Id.* The Court, however, does not interpret *Beard* as a "contrary decision" to the Third Circuit's prediction of Pennsylvania products liability law- as the Pennsylvania Supreme Court did not resolve the disrepaired state of Pennsylvania products liability law nor did the Supreme Court adversely comment on the Third Circuit's prediction that Pennsylvania will ultimately adopt the Restatement (Third) of Torts. The Court is thus bound by the *Berrier* and *Covell* holdings. Such a resolution comports with the mandates of *Erie* and Third Circuit precedent. *See, e.g., Holmes*, 598 F.3d at 118; *Edwards*, 497 F.3d at 361; *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 489 (3d Cir. 1991).

**§ 2: Categories of a Product Defect**

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, . . . . A product:

(a) contains a *manufacturing defect* when the product departs from its intended use even though all possible care was exercised in the preparation and marketing of the product;

(b) is *defective in design* when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe; . . .

Restatement (Third) of Torts §§ 1-2 (1998) (emphasis added).

Plaintiffs adequately state both a manufacturing defect claim and design defect claim against Defendants. As to the manufacturing defect claim, Plaintiffs allege that Defendants were engaged in the business of producing and selling boom trucks with truck-mounted insulated devices. (Complaint, ¶ 3.) Plaintiffs also assert that Defendants sold the Boom Truck in an unreasonably dangerous and defective condition and the Boom Truck remained in a substantially unaltered condition throughout Four Seasons' ownership of the vehicle. (Complaint, ¶¶ 31, 33.) Plaintiffs also allege that the Boom Truck was defectively manufactured, as the "welds that attached the gusset plates (or side plates) to lower the boom, at the pivot point, were defective," causing the Boom Truck to depart from its intended use. (Complaint, ¶ 12.) And, Plaintiffs assert that the manufacturing defect caused Mr. Giehl's injuries. (Complaint, ¶¶ 15-19, 35).

As to the design defect claim, Plaintiffs allege that the Boom Truck was defective at the time of sale, (Complaint, ¶¶ 31, 33), that Terex engaged in the business of selling these products, (Complaint, ¶ 3), and that the design defect caused Mr. Giehl's injuries. (Complaint, ¶¶ 15-19, 35.) Plaintiffs claim that it was a foreseeable risk that an individual could be injured attempting to rescue a co-worker stranded in a defective boom truck's bucket. (Complaint, ¶ 8.) Additionally, Plaintiffs assert that the Boom Truck was defectively designed because "the gusset plates which failed, separated and/or deformed, were grossly undersized." (Complaint, ¶ 12.) Lastly, Plaintiffs assert that a reasonable alternative design

exists, as the gusset plates could have been larger, thicker, and wider. (Complaint, ¶ 12.)

These allegations are sufficient to state a products liability design defect and manufacturing defect claim.[5]  Plaintiffs may proceed with the products liability cause of action.

**D.      Plaintiffs' Breach of Warranty Claim**

Plaintiffs' final cause of action asserts a breach of warranty claim. (Complaint, ¶ 40.) According to Plaintiffs, Terex breached both the express and implied warranties of fitness and merchantability when the Boom Truck failed to work for its intended purposes. (Complaint, ¶¶ 37-40.)  Defendants, however, argue that the breach of warranty claim should be dismissed as untimely. (Doc. 3, 12-13.)  Defendants claim that because the Boom Truck was sold to Four Seasons in 2003 and Mr. Giehl's injuries did not occur until 2009, the breach of warranty claim was not filed within the applicable four-year statute of limitations period. (Doc. 3, 13.)

In Pennsylvania, a breach of warranty claim is governed by a four-year statute of limitations period. *See* 13 Pa. C.S.A. § 2725(a) ("an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued").  13 Pa. C.S.A. § 2725(b) further provides that "a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods . . . ." *Id*.  And, "the Pennsylvania Supreme Court has squarely held that the four-year statute of limitations applies to all warranty actions arising

---

[5]      The Court would also deny Defendants' motion to dismiss even if the Court elected to apply the Restatement (Second) of Torts, and not the Restatement (Third) of Torts as set forth by *Berrier* and *Covell*, because the Pennsylvania Supreme Court has never addressed the issue as to whether a bystander and not a user of a product can bring a products liability claim against a manufacturer to recover for injuries that occurred while an intended user used the manufacturer's product. *See Berrier*, 563 F.3d at 40,

from sales of goods, including those in which the plaintiff seeks to recover for personal injuries." *Pitts v. Northern Telecom, Inc.*, 24 F. Supp. 2d 437, 443 (E.D. Pa. 1998) (citing *Williams v. West Penn Power Co.*, 502 Pa. 557, 467 A.2d 811, 818 (1983)).

Breach of warranty claims accrue on the date that the seller tenders delivery of the goods. *See Pitts*, 24 F. Supp. 2d at 443 (citing *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, n.2d (E.D. Pa. 1996)).  Moreover, the discovery rule applicable to tort claims does not apply in warranty actions. *See Pitts*, 24 F. Supp. 2d at 443; *see also Northampton Cty. Area Cmty. Coll. v. Dow Chem., U.S.A.*, 389 Pa. Super. 11, 566 A.2d 591, 599 (Pa. Super. 1989) (citing *Patton v. Mack Trucks, Inc.*, 360 Pa. Super. 1, 519 A.2d 959, 964 (Pa. Super. 1986)).

Plaintiffs rely on the Third Circuit's decision in *Hahn v. Atl. Richfield, Co.*, 625 F.2d 1095 (3d Cir. 1980), as support for their position that the two-year personal injury statute of limitations, accruing on the date of injury, should govern Mr. Giehl's third-party personal injury claim.  In *Hahn*, the Third Circuit predicted:

> [T]hat the Supreme Court of Pennsylvania would apply the personal injury statute of limitations to govern Hahn's claim of breach of an implied warranty in the alleged sale of the defective hoist to his employer.  We note that our holding on this issue comports with the result reached by the Superior Court of Pennsylvania in *Salvador v. Atl. Steel Boiler, Co.*, 256 Pa. Super. 330, 289 A.2d 1148 (Pa. Super. 1978) (*Salvador II*).

*Hahn*, 625 F.2d at 1105-06.

The Pennsylvania Supreme Court, however, in *Williams v. West Penn Power Co.*, 467 A.2d at 818, rejected the *Salvador II* holding- the case relied on by the Third Circuit in *Hahn*.  The Pennsylvania Supreme Court specifically stated that "[w]e therefore now express our disapproval of the holding in *Salvador II*.  We rule today that section 2-725 of the Code applies to all breach of warranty actions brought under the Code and that no exception will be made merely because the claim seeks to recover for personal injuries." *Id*.

Based on *Williams*, the Court finds that Plaintiffs' breach of warranty claim is barred by the applicable four-year statute of limitations.  Although courts generally do not dismiss a claim as untimely on a motion to dismiss, the Court may dismiss a cause of action where

the untimeliness of the claim is apparent from the face of the complaint. *See Metso Paper USA, Inc.*, 2011 WL 2670320, at *3.

Plaintiffs allege Defendants breached the express and implied warranties of fitness and merchantability by delivering the defective Boom Truck to Four Seasons. (Complaint, ¶¶ 3, 40.)  The Boom Truck was delivered to Four Seasons on or about February 3, 2003. (Complaint, ¶ 3.)   Plaintiffs allege that Mr. Giehl's injuries occurred on July 2, 2009. (Complaint, ¶ 5.)  And, Plaintiffs commenced this action by filing a Writ of Summons in the Court of Common Pleas of Wayne County, Pennsylvania, on June 29, 2011. (Complaint, ¶ 5.)  Thus, because the breach of warranty claim accrued in February of 2003, *see Pitts*, 24 F. Supp. 2d at 443, but Mr. Giehl's injuries did not occur until 2009, the action was not commenced until 2011, and the discovery rule does not apply to warranty claims, Plaintiffs' breach of warranty claim, filed well-over four-years after tender of the Boom Truck to Four Seasons, is clearly barred by the statute of limitations.  As such, Terex's motion to dismiss the breach of warranty claim as untimely will be granted and the breach of warranty claim will be dismissed with prejudice.

### III. Conclusion

For the above stated reasons, Terex's Motion to Dismiss Plaintiffs' Complaint (Doc. 3) will be granted in part and denied in part.  The motion to dismiss Plaintiffs' breach of warranty claim will be granted.  However, the motion to dismiss Plaintiffs' negligence and strict products liability claim will be denied.

An appropriate order follows.

April 9, 2012                                    /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

19